# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,

    v.

RAKIEM DUMAS,

        Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

Cr.A. No.: 1412009796

Submitted: January 15, 2016
Decided: February 22, 2016

Rebecca Song, Esquire
Office of the Attorney General
820 North French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Jonathan Layton, Esquire
Layton & Associates, P.A.
1308 Delaware Avenue, Suite 8
Wilmington, DE 19806
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION FOR REARGUMENT

Defendant Rakiem Dumas ("Dumas") brings this Motion for Reargument ("Motion") of the Court's November 2, 2015 ruling denying Dumas' Motion for Judgment of Acquittal. A hearing on the Motion was held on January 15, 2016, and the Court heard oral argument from Dumas and the State. At the conclusion of the hearing the Court reserved decision. This is the Court's Final Decision and Order.

## Facts & Relevant Procedural History

On March 25, 2015, Dumas was arrested for Terroristic Threatening after speaking to a visibly pregnant Division of Family Services ("DFS") employee (hereinafter "Victim"). The Victim has handled Dumas' custody case since 2013. The arrest arose from an incident occurring at the New Castle County Family Court after a custody review hearing involving Dumas, at which hearing the Victim was present when Dumas lost custody of his children. Dumas encountered the Victim in the courthouse after the hearing and said to her "oh, you're pregnant, how would you feel if I depregnated [sic] you and made sure you could not bring any children home?" (hereinafter "Statement"). Shortly thereafter, the Victim relayed this information to DFS personnel and Capital Police, and Dumas was arrested for Terroristic Threatening.

On May 4, 2015, Dumas plead not guilty to the charge of Terroristic Threatening and demanded a jury trial. The case proceeded to trial on November 2, 2015, and prior to deliberation Dumas moved for a judgment of acquittal. This Court denied that motion. Upon returning a guilty verdict, the jury was dismissed and this Court granted Dumas leave to file a motion for reargument.

Dumas timely filed the instant Motion, and on January 15, 2016 this Court heard oral argument. Dumas argues that the Statement is protected speech because Dumas uttered it as a hypothetical statement "made with the intent to have [the victim] empathize with [Dumas]."[1] Dumas also contends that the State failed to prove its case-in-chief since the State did not show that Dumas communicated an actual threat to commit a crime or that he intended to threaten the Victim.[2] Dumas argues that the Terroristic Threatening statute's *mens rea* requires the State to

---

[1] Def.'s Mot. ¶ 16.
[2] Def.'s Mot. ¶ 11.

demonstrate a defendant's subjective intent to threaten through "proof particularized to the individual defendant," and that since no such proof was offered at trial the Motion for Judgment of Acquittal should have been granted.

In its Response, the State contends that this Motion is procedurally defective because a motion for reargument is "applicable only to non-jury trials."[3] In the alternative, the State argues that the Statement is an unprotected true threat, regardless of its alleged hypothetical nature. Moreover, the State contends that it can prove subjective intent by "showing Defendant 'intentionally, knowingly, or recklessly made a threat,'"[4] and that the jury may infer subjective intent from the Statement's context.[5]

The primary issues before the Court are twofold: (1) whether unlike a true threat, hypothetical or conditional threats are afforded First Amendment protections which preclude Dumas' conviction; and (2) if Dumas' statement to the Victim is not protected speech, whether there was sufficient evidence to sustain a guilty verdict.

## LEGAL STANDARD

Pursuant to Court of Common Pleas Criminal Rule 57(b), "if no procedure is specifically prescribed by Rule, the Court may proceed in any lawful manner not inconsistent with these Rules or with any applicable statute."[6] Court of Common Pleas Civil Rule 59(e) vests this Court with the power to hear motions for reargument in the civil context.[7] This Court has previously

---

[3] State's Mot. p. 3; the State's line of reasoning in this regard is not supported by binding case law. Those cases addressing this issue neither squarely address it nor explicitly preclude a motion for reargument after a jury trial. Therefore, in the interest of justice, the Court will address the Motion on its merits, as it is properly before the Court pursuant to Criminal Rule 57(b).
[4] Id.
[5] Id. at 3 – 4.
[6] CCP Crim. R. 57(b).
[7] CCP Civ. R. 12(e).

3

addressed motions for reargument brought pursuant to Civil Rule 59(e) via Criminal Rule 57(b).[8]

Moreover, Delaware courts have addressed motions for reargument in the jury trial context.[9]

To succeed on a motion for reargument the movant must show that the Court has "overlooked a controlling precedent or legal principles, or [that] the Court has misapprehended the law or facts such as would affect the outcome of the decision."[10] In short, "the movant must demonstrate newly discovered evidence, a change in law, or manifest injustice."[11]

A motion for judgment of acquittal will "only be granted where the State has offered insufficient evidence to sustain a verdict of guilt. In determining whether to grant the motion, the Court must consider all evidence in a light most favorable to the State."[12]

## DISCUSSION

### A. True Threats

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."[13] This Amendment "affords protection to symbolic or expressive conduct as well as to actual speech."[14] These protections are not absolute and the "government may regulate certain categories of expression consistent with the Constitution."[15] First Amendment protections do not extend to true threats.[16]

---

[8] *See State v. Santiago*, Del. CCP, C.A. No. 12-12-0011741, Fraczkowski, J. (February 24, 2014); *see also State v. Bifferato III.*, 2010 WL 3958778 (Del. Com. Pl. Aug. 17, 2010); *see also State v. Munzer*, 2009 WL 206088 (Del. Com. Pl. Jan. 9, 2009).

[9] *See State v. Carrea*, 2007 WL 404769 (Del. Super. Jan. 30, 2007); *see also State v. Dorsey*, 2000 WL 1610678 (Del. Super. Oct. 18, 2000).

[10] *Carrea*, at *2 (citing *Kovach v. Brandywine Innkeepers Ltd. P'ship.*, 2001 WL 1198944 (Del. Super. Oct. 1. 2001)).

[11] *World Airways, Inc. v. Golson*, 2013 WL 6917358, at *2 (Del. Super. Nov. 8, 2013) (quoting *Brenner v. Village Green Inc.*, 2000 WL 972649, at *1 (Del. Super. May 23, 2000)).

[12] *State v. Kelsch*, 2013 WL 4131107, at *3 (Del. Com. Pl. Aug. 15, 2013).

[13] *Virginia v. Black*, 538 U.S. 343, 358 (2003).

[14] *Id.*

[15] *Id.*

[16] *See Watts v. United States*, 394 U.S. 705, 708 (1969).

4

A true threat is a statement made where the "speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual."[17] "The speaker need not actually intend to carry out the threat."[18] In determining whether a statement is an unprotected true threat courts will look to the context, conditionality, and reaction of the listeners to the statement.[19] On its own, conditionality will not of necessity afford, what might otherwise be considered a true threat, First Amendment protection.[20] Instead, in parsing the threatening nature of a particular communication, conditionality is but one factor to be weighed with other contextual elements.[21]

Dumas' argument that the Court overlooked controlling precedent or legal principles so as to preclude a guilty verdict is unavailing. Contrary to Dumas' contention that hypothetical or conditional threats necessitate a unique analysis as compared to that under which unconditional threats are examined, true threat jurisprudence has evolved to largely ignore this type of distinction. There exists no binding case law categorically excluding a conditional or hypothetical threat from the true threat category. Indeed, despite there being a circuit split on how a court should analyze a defendant's intent to threaten, when looking at the statutory elements as a whole, federal courts have consistently adhered to the basic principles espoused in *Watts* and *Black*; namely, that a court must examine an utterance's content and context to

---

[17] *Black*, 538 U.S. at 359.
[18] *Id.* at 360.
[19] *Watts*, 394 U.S. at 708.
[20] *United States v. Kosma*, 951 F.2d 549, 554 n. 8 (3d Cir. 1991); *see United States v. Elonis*, 730 F.3d 321 (3d Cir. 2013) *cert. granted, rev'd on other grounds, sub nom Elonis v. United States*, 135 S.Ct. 2001 (2015); *see also United States v. Clemens*, 738 F.3d 1, 8 (1st Cir. 2013) (true threat need not be "unequivocal, unconditional, and specific").
[21] *See Black*, 538 U.S. 343; *see also Watts*, 394 U.S. at 708; *see also Kosma*, 951 F.2d 549, 554; *United States v. O'Dwyer*, 443 Fed. Appx. 18 (5th Cir. 2011) (in assessing threat, court looked to communication's context as well as defendant's history and background); *United States v. Parr*, 545 F.3d 491 (7th Cir. 2008) (permissible "for a jury to make inferences from the context and circumstances surrounding communication"); *United States v. Malik*, 16 F.3d 45, 50 (2d Cir. 1994) ("rigid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience would render the statute powerless against the ingenuity of threateners").

5

determine whether or not it is a true threat. Whether conditional, hypothetical, or otherwise, a threat is not to be examined under a linguistic microscope wholly severed from its context, but is instead analyzed part and parcel with its surrounding circumstances.

The line dividing protected speech from unprotected true threats is somewhat veiled by the complexity of language. However, from the controlling precedent has emerged an easy-to-apply rule that although substantively less prescriptive, enables ready application to the myriad situations in which a threat occurs and facile analysis of the infinite forms a threat may take. Since controlling precedent fails to provide a bright-line rule categorizing true threats, whether conditional or otherwise, and instead emphasizes the importance of contextual analysis, this Court concludes that no legal principles or controlling precedent of consequence were overlooked or misapplied when the jury considered the Statement along with the context in which Dumas uttered it.[22]

### B. Terroristic Threatening

Pursuant to 11 *Del C.* § 621 a person commits Terroristic Threatening when "he threatens to commit any crime likely to result in death or in serious injury to person or property."[23] "Whether the threatened act is completed is immaterial . . . [,]the crime is complete when the actor threatens a crime."[24] Section 621 applies "only to speech made with the subjective intent to threaten [or intimidate]."[25] "Subjective intent to threaten may be proved by showing the defendant intentionally, knowingly or recklessly made a threatening statement."[26] The statement must be "viewed in light of its context and the totality of the circumstances."[27]

---

[22] Neither party contends misapprehension of facts, therefore the Court will not address this issue.
[23] 11 *Del. C.* § 621.
[24] *Allen v. State*, 453 A.2d 1166, 1168 (Del. 1982).
[25] *Andrews v. State*, 930 A.2d 846, 852 (Del. 2007); *accord Lowther v. State*, 104 A.3d 840, 843 (Del. 2014).
[26] *Lowther*, 104 A.3d 845.
[27] *Id.* at 843.

Dumas argues that the State's evidence was insufficient to sustain the guilty verdict. This argument necessarily fails since there is no doubt that a reasonable jury could have inferred, from the Statement's context, Dumas' subjective intent to threaten the Victim. The Statement was made after a hearing where Dumas lost custody of his children. The Victim, who was present at that hearing encountered Dumas in the courthouse afterwards. During this face-to-face encounter with the visibly pregnant Victim, instead of making an innocuous statement that might elicit empathy, Dumas seemingly tailored his words to the circumstances before him by gearing his language to the Victim's particularly overt susceptibility and invoking the powerful notion of losing an unborn child. Viewing the Statement in light of the totality of the circumstances, and considering the nature of true threats and the elements of section 621, this Court finds there is no manifest injustice in the jury's verdict since the evidence was sufficient to sustain a verdict of guilty.

## CONCLUSION

For the foregoing reasons Defendant's Motion for Reargument is **DENIED**.

**IT IS SO ORDERED.**

The Honorable Carl C. Danberg,
Judge

cc: Charmar Jones, Judicial Case Manager